IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**In re: CCA Recordings 2255 Litigation,**
                  **Petitioners,**

v.                                          Case No. 19-cv-2491-JAR

**(This Document Relates to Case Nos. 14-cr-20014-JAR-13, 15-cr-20006-JAR-1, 15-cr-20020-JAR-5,** *United States v. Petsamai Phommaseng,* **and  Case Nos. 18-cv-2477-JAR, 18-cv-2478-JAR, 18-cv-2479-JAR,** *Petsamai Phommaseng v. United States*)

**United States of America.**
                  **Respondent.**

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Petsamai Phommaseng's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255, as supplemented, filed in three separate cases (Doc. 746 in Case No. 14-20014-JAR-13; Doc. 205 in Case No. 15-20006-JAR-1; and Doc. 550 in Case No. 15-20020-JAR-5).[1]  Petitioner bases his motion for relief on three claims: (1) that the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his protected attorney-client communications; (2) that trial counsel was ineffective for failing to timely file a notice of appeal; and (3) that trial counsel was ineffective for failing to adequately challenge the drug quantity attributed to him in the Presentence

---

[1] Documents referenced herein refer to documents filed in the second underlying criminal case, 15-20020-JAR-5, unless otherwise noted.  Citations prefaced with "*CCA Rec. Lit.* Doc." refer to filings and entries in this consolidated case, No. 19-cv-2491-JAR-JPO. With the exception of *United States v. Black*, Doc. 758 Findings of Fact and Conclusion of Law (*Black* Order), citations to filings and exhibits in No. 16-cr-20032-JAR are prefaced with "*Black* Doc." and "*Black* Ex.," respectively.

Investigation Report ("PSIR"). The Court **grants** Petitioner's Motion to Withdraw Claims 2 and 3.[2]

In his remaining claim, Petitioner asks the Court to reject the government's request to dismiss this action on procedural grounds, and to find that he has made a sufficient showing to warrant an evidentiary hearing. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or alternatively, to reduce his term of imprisonment by approximately 50% and vacate his term of supervised release and forfeiture money judgment. The government subsequently moved to supplement the record with respect to Petitioner's attorney-client call recordings (Doc. 786 in Case No. 19-2491). The matter is fully briefed, and the Court is prepared to rule. For the reasons explained in detail below, the Court grants the government's motion to supplement the record. The Court dismisses Petitioner's challenge to his conviction. Petitioner's challenge to his sentence, including any term of supervised release, is denied without an evidentiary hearing. Petitioner is also denied a certificate of appealability.

## I. Background

### A. Procedural History

Petitioner was charged in the District of Kansas in three separate cases, alleging numerous drug trafficking, conspiracy, and firearm charges. In the first case, No. 15-cr-20006-JAR-1, Petitioner was charged with being a user of methamphetamine in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3) (Count 2); using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4); and

---

[2] *CCA Rec. Lit.*, Doc. 751.

possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 8).[3]

Petitioner was arrested on February 20, 2015, and although an attorney with the Federal Public Defender's Office ("FPD") entered his appearance in the case, he withdrew his appearance on the same day due to a conflict of interest. The Court appointed attorney Branden A. Bell, who was then in private practice, to represent Petitioner.[4] In July 2015, Bell filed a number of motions to suppress evidence, including a motion to suppress evidence recovered during a traffic stop on January 21, 2015.[5] After holding an evidentiary hearing on August 21, 2015, this Court took the motions to suppress under advisement.[6] On September 8, 2015, Bell moved to withdraw as counsel.[7] This Court granted the motion on September 14, 2015, and on September 24, 2015, appointed attorney Jacquelyn E. Rokusek to represent Petitioner in this case.[8] On October 12, 2015, this Court denied Petitioner's motions to suppress.[9]

In the second case, No. 15-cr-20020-JAR-5, Petitioner was charged with conspiring to manufacture, distribute, and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) (Count 1); and two counts of using a communication facility to commit the crime charged in Count 1, in violation of 21 U.S.C. § 843(b) (Counts 2 and 3).[10] At the initial appearance on April 6, 2015,

---

[3] No. 15-20006-JAR-1, Doc. 63.

[4] *Id.*, Docs. 8, 40.

[5] *Id.*, Docs. 39, 40.

[6] *Id.*, Doc. 61.

[7] *Id.*, Doc. 71.

[8] *Id.*, Docs. 74, 76.

[9] *Id.*, Doc. 78.

[10] Doc. 157.

Bell was appointed counsel for Petitioner.[11]  Bell moved to withdraw as counsel on September 8, 2015,[12] and Rokusek was appointed on September 24, 2015.[13]

In the third case, No. 14-cr-20014-JAR-13, Petitioner was charged in a Sixth Superseding Indictment with conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine (Count 1).[14]  Petitioner was arrested on December 2, 2015, and Rokusek was appointed to represent him.[15]

On April 26, 2016, Petitioner pled guilty in each case pursuant to Fed. R. Crim. P. 11(c)(1)(C) and entered into three separate written binding plea agreements.[16]  In Case No. 15-20006, Petitioner entered a conditional plea, reserving the right to appeal the Court's October 12, 2015 order denying his motion to suppress evidence obtained as a result of a January 21, 2015 traffic stop and subsequent search.  In all three cases, the parties agreed to a total sentencing range of no less than 120 months and no more than 240 months' imprisonment, with the sentences in each of the three cases to run concurrently.  Petitioner expressly waived his right to appeal or collaterally attack his convictions or sentences, except for subsequent claims of ineffective assistance of counsel or prosecutorial misconduct, as long as the Court sentenced him within the proposed range of 120 to 240 months' imprisonment as recommended by the parties under Rule 11(c)(1)(C).

---

[11] Doc. 43.

[12] Doc. 158.

[13] Doc. 165.

[14] No. 14-20014-JAR-13, Doc. 323.

[15] *Id.*, Doc. 333.

[16] No. 14-20014-JAR-13, Docs. 475-78; No. 15-20006-JAR-1, Docs. 90-94; No. 15-20020-JAR-5, Docs. 244-47.

On January 18, 2017, Petitioner moved to withdraw his guilty pleas, alleging prosecutorial misconduct related to the government's representations about the sentence the parties' agreed upon in the Rule 11(c)(1)(C) plea agreements.[17]  Petitioner claimed that it was legally impossible for the Court to sentence him below 15 years' imprisonment, despite the parties' agreement to a sentence in the range of 10 to 20 years.[18]  Although the government did not oppose Petitioner's request to withdraw his guilty pleas, the Court denied Petitioner's motion after finding the parties had agreed to impose separate sentences in each of the three cases.[19]

A PSIR was prepared in each case.  In Case No. 14-20014, based on a total offense level of 37 and a criminal history category of III, the PSIR calculated Petitioner's applicable Guidelines range at 262 to 327 months' imprisonment.[20]  In Case No. 15-20006, based on a total offense level of 35 and a criminal history category of III, the PSIR calculated Petitioner's applicable Guidelines range at 210 to 262 months' imprisonment.[21]  And, in Case No. 15-20020, based on a total offense level of 37 and a criminal history category of III, the PSIR calculated Petitioner's applicable Guidelines range at 262 to 327 months' imprisonment.[22]  The government filed sentencing memoranda prior to the sentencing hearing requesting a total sentence of 240 months' imprisonment, the high end of the agreed-upon range in the plea agreements.[23]  Petitioner filed sentencing memoranda seeking an overall sentence of 120 months'

---

[17] Doc. 383.

[18] *Id.*

[19] Doc. 393.

[20] No. 14-20014, Doc. 681 ¶ 208.

[21] No. 15-20006, Doc. 148 ¶ 198.

[22] Doc. 451 ¶ 205.

[23] Doc. 434.

imprisonment, based on his history and characteristics, the use of historical drug weight to calculate relevant conduct, and his amenability to rehabilitation.[24]

The Court proceeded to sentence Petitioner, in three separate sentencing hearings conducted on August 22 and October 2, 2017, to a controlling sentence of 180 months' imprisonment in each case, to run concurrently to the other two cases, followed by a five-year term of supervised release. These sentences were below the Guidelines range applicable in each case.[25]

As noted above, Petitioner entered a conditional plea in Case No. 15-20006, reserving his right to appeal the Court's order regarding the January 21, 2015 traffic stop and resulting search.[26] On October 19, 2017, Petitioner filed a pro se notice of appeal that was filed and docketed under all three cases, raising only the suppression issue on appeal. Petitioner subsequently moved to voluntarily dismiss his appeal, which the Tenth Circuit granted.

The Court appointed the FPD to represent Petitioner in his § 2255 proceedings on July 17, 2018.[27] On September 6, 2018, the FPD filed a § 2255 motion on behalf of Petitioner in all three underlying criminal cases asserting three grounds for relief: (1) the government violated his Sixth Amendment right to confidential attorney-client communications when it allegedly obtained soundless video recordings of his meetings with counsel while he was incarcerated at CCA; (2) Rokusek provided ineffective assistance of counsel when she failed to timely file a notice of appeal; and (3) Rokusek provided ineffective assistance of counsel when she failed to

---

[24] Doc. 429.

[25] *See* Doc. 689, at 1 (Guidelines range 210-327 months) (14-20014); Doc. 174, at 1 (Guidelines range 210-262 months on Counts 2 and 8, 60 months on Count 4) (15-20006); Doc. 464, at 1 (Guidelines range 262-327 months) (15-20020).

[26] Doc. 94 at 15.

[27] Standing Order 18-3.

adequately challenge the drug quantity attributed to him.[28]  As noted, Petitioner withdraws Claims 2 and 3.  On January 17, 2019, Petitioner supplemented his § 2255 motion to claim that the government also accessed and obtained audio recordings of at least 76 phone calls he made to his counsel from CCA.[29]  Petitioner's release date is September 8, 2025.

### B. The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events documented in the *Black* case and investigation, which included audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  On August 13, 2019, the Court issued the *Black* Order, which addressed, *inter alia*, the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[30]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's decision in *Shillinger v. Haworth*,[31] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the

---

[28] Doc. 550.

[29] Doc. 583.

[30] *Black* Order at 145–62.

[31] 70 F.3d 1132 (10th Cir. 1995).

attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[32]  Once those elements are established, prejudice is presumed.[33]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[34]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the audio recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the telephone recording exists, and (2) a given call contains protected attorney-client communication, i.e., communication that relates to legal advice or strategy sought by the client.[35]  This threshold showing requires an affidavit from defense counsel confirming that the nature and purpose of the call(s) were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery.[36]

With respect to the video recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; and (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel.[37]  This threshold

---

[32] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[33] *Id.*

[34] *Id.* at 163.

[35] *Id.* at 166.

[36] *Id.*

[37] *Id.*

showing also requires an affidavit from defense counsel confirming that the nature and purpose of the meeting(s) were within the ambit of protected communication.[38]

### C. Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[39] It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the process for seeing over 100 cases to completion would be streamlined for all parties. Like the *Black* Order, the Court assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Relevant here, on January 18, 2021, the Court issued an order: (1) reaffirming and expanding its holding regarding the applicable Sixth Amendment standard; (2) addressing the collateral-waiver-by-plea issue; and (3) addressing jurisdictional defenses raised by the government, including certification requirements under Rule 2(b) of the Rules Governing Section 2255 Proceedings.[40] Specifically, the Court ruled that three petitioners in this consolidated litigation who proceeded to trial in their underlying criminal proceedings are entitled to evidentiary hearings on their audio recording Sixth Amendment claims. Second, the Court determined that the rule in *Tollett v. Henderson* procedurally barred petitioners who

---

[38] *Id.*

[39] *CCA Rec. Lit.*, Doc. 1.

[40] *Id.*, Doc. 730 (clarified and reconsidered in part on other grounds, *id.*, Doc. 784).

alleged pre-plea Sixth Amendment violations from advancing those claims.[41] Third, the Court determined that approximately twenty petitioners lacked standing to advance their Sixth Amendment claims for various reasons, including: claims that alleged post-sentencing violations; claims where petitioners who had been deported challenged only their sentence; claims where petitioners challenging their sentence had been sentenced to the mandatory-minimum sentence; and claims involving binding pleas that were accepted by the court at the change-of-plea hearing.[42]

On December 10, 2021, the Court issued an order that concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[43] Instead, Petitioners in this temporal category must demonstrate prejudice, that is, "a realistic possibility of injury to [the defendant] or benefit to the [government]."[44]

### D.    Recordings in this Case

While Petitioner was detained at CCA, he spoke on the phone with Bell. He also met with Rokusek in visitation rooms at CCA. Some of these phone calls and meetings were recorded, as detailed below.

#### 1.    Audio Recordings

Upon arriving at CCA, Petitioner signed several documents acknowledging that telephone calls that he made from CCA may be monitored and recorded and advising him that

---

[41] *Id.* (citing 411 U.S. 258 (1973)).

[42] *Id.*, Docs. 730, 784.

[43] *Id.*, Doc. 1034.

[44] *Id.*; *see Shillinger v. Haworth,* 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

calls with his attorney were subject to being monitored unless he followed the privatization procedure in place to make an unmonitored call.

On May 11, 2015, the prosecution requested and received from CCA recordings of all phone calls Petitioner placed from CCA using his assigned pin number from February 26, 2015, through May 10, 2015, without making any effort to exclude his attorney-client calls from that request. CCA responded by delivering a CD of recorded calls to AUSA Sheri Catania, the prosecutor in the case, who signed a receipt indicating the calls had been received on May 18, 2015.

The government contends that on May 20, 2015, it provided defense counsel with Petitioner's calls as part of discovery, which included both the call detail summary and the recordings of the telephone calls. Bell sent a letter acknowledging receipt of the calls on June 4, 2015.

In the *Black* case, the government surrendered to the Court recordings and derivative evidence of audio calls from CCA that were in its possession, including the recordings of the calls in Petitioner's case. Copies of the recordings were provided to the FPD on January 9, 2019. The FPD reviewed audio recordings of Petitioner speaking with Bell from CCA between March 2 and July 27, 2015.[45]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during sixteen phone conversations, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Bell.[46] Petitioner also provided a sworn Declaration from Bell stating that as both a member of the FPD and during his time in private

---

[45] *CCA Rec. Lit.*, Doc. 773-2.
[46] *Id.*

practice, he understood that all phone numbers used by the FPD, whether land lines or assigned cell phones, were provided to CCA to be marked as "private" numbers and thus not recorded or available to the government.[47] He had this same understanding while in private practice and submitted his phone numbers to CCA to be marked as private. He further states that as a matter of practice, he informed his clients that their calls with him were confidential and not recorded. Before August 16, 2016, he had no reason to believe those calls were recorded and assumed phone calls from clients to his office, both in private practice and at the FPD, were not recorded because the law requires clients to be afforded a reasonable opportunity for private consultation with counsel. Whenever he spoke with a client calling from CCA, they discussed legal matters that he considered to be legally protected communication.

After the government objected to Petitioner's privilege log, the Court reviewed the audio recordings *in camera*. As set out in the privilege log, Petitioner and Bell discussed legal advice or strategy, including evidentiary matters, discovery, plea negotiations, charges against Petitioner's wife, recent changes to a particular law, Petitioner's potential Guidelines sentence, and motions to be filed. At the beginning of each call, a recorded preamble states the following language: "This is a collect call from an inmate at CCA-Leavenworth Detention Center. This call is subject to recording and monitoring." On a call made March 2, 2015, Bell tells Petitioner that "law enforcement is listening to every call you make that is not to a lawyer." On the call made May 5, 2015, Bell asked Petitioner if the preamble warning that the calls were being monitored or recorded was played at the beginning of the call, and he then cautions Petitioner about talking details of his interview with the government on the phone because "we don't have

---

[47] *Phommaseng v. United States*, No. 18-2479, Doc. 10-1.

attorney-client privilege on this phone call." Petitioner supplemented the record with a sworn statement addressing the issue of waiver with respect to the audio recording claims.[48]

On May 5, 2021, the government moved to supplement the record to include call access logs and email correspondence, which together show that seven of the sixteen telephone call recordings on Petitioner's privilege log were accessed because Petitioner's defense counsel requested the recordings.[49] The Court grants the government's request.

### 2. Video Recordings

On August 13, 2019, this Court released the video recordings to the FPD as a result of the *Black* investigation. The FPD, along with defense counsel Rokusek, reviewed eight video recordings of Petitioner meeting with Rokusek in person at CCA between February 23, 2016 and April 25, 2016.[50] Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during these meetings, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Rokusek.[51] Petitioner also provided an affidavit from Rokusek, stating that she was unaware that they were being recorded, that she and Petitioner discussed matters related to legal advice or strategy, and that she considered the communications to be protected.[52] AUSAs Catania and James Ward deny watching these recordings.[53]

After the government objected to Petitioner's privilege log, the Court reviewed the video recordings *in camera*. As set out in the privilege log, these meetings ranged from one to nearly

---

[48] *Id.*, Doc. 9-1.

[49] *CCA Rec. Lit.*, Doc. 786.

[50] *Id.*, Doc. 773-2.

[51] *Id.*

[52] *Phommaseng v. United States*, No. 18-2479-JAR, Doc. 6-1.

[53] *Id.*, Docs. 3-1, 3-2.

three hours, and show Petitioner and Rokusek reviewing documents, the contents of a laptop, and the Sentencing Guidelines Manual. In light of the analysis below, however, further details of the meeting visible in the videos are not pertinent and will not be discussed in this order.

## II.     Discussion

Petitioner's claim is in the temporal category of motions alleging both pre- and post-plea/pre-sentencing Sixth Amendment violations. Petitioner falls in a sub-category of these claims involving a Rule 11(c)(1)(C) binding plea agreement for a specific term. Two recent decisions by the Tenth Circuit Court of Appeals control this Court's analysis of Petitioner's claims. The Court first discusses Petitioner's pre-plea violation claim, then turns to his post-plea/pre-sentence violation claim.

### A.     *Spaeth*

Petitioner is one of many petitioners in this consolidated matter who allege pre-plea Sixth Amendment violation claims, including Matthew Spaeth, whose pre-plea claim was dismissed by this Court as foreclosed by the rule in *Tollett*.[54] In that case, the United States Supreme Court rejected a pre-plea constitutional challenge where the defendant failed to show that the violation rendered his guilty plea involuntary and unknowing.[55] Many of these petitioners, including Mr. Phommaseng, declined the opportunity afforded by the Court to amend their § 2255 motions to seek relief under *Tollett* or to allege a post-plea violation, and acknowledged that by doing so,

---

[54] 411 U.S. 258, 266 (1973).
[55] *Id.*

they rendered their pre-plea Sixth Amendment claims vulnerable to dismissal.[56] The Court deferred ruling on Petitioner's § 2255 motion pending the outcome of Mr. Spaeth's appeal.[57]

On June 12, 2023, the Tenth Circuit Court of Appeals affirmed this Court's ruling in *United States v. Spaeth*.[58] The Tenth Circuit ruled: (1) the carve-out provision in Spaeth's unconditional standard plea agreement did not constitute a waiver of the government's right to raise, or create an exception to, the rule of law in *Tollett*, and because Spaeth had not met his burden under *Tollett* to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth Amendment challenge;[59] (2) Spaeth's reliance on the per se Sixth Amendment violation rule in *Shillinger* is misplaced because that case did not concern *Tollett*'s guilty-plea situation and "has nothing to do with whether a guilty plea is voluntary or knowing";[60] and (3) *Tollett* precludes Spaeth from challenging his sentence based on an alleged pre-plea Sixth Amendment violation.[61] The court concluded:

> We abide by several principles that the Supreme Court made transparent 50 years ago. When a defendant voluntarily and knowingly pleads guilty, the defendant acknowledges that unconstitutional conduct preceding the guilty plea is irrelevant to the admission of factual guilt. As a result, we do not assess the merits of pre-plea constitutional claims but instead ask whether ineffective assistance of counsel caused defendants to enter their guilty pleas involuntarily and unknowingly. *Tollett* and its progeny tell us how to answer that question: challengers must show ineffective assistance of plea counsel. Because Spaeth does

---

[56] *CCA Rec. Lit.*, Doc. 879; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[57] *See Spaeth v. United States*, No. 19-2413-JAR-JPO, Docs. 3, 7, 8; *CCA Rec. Lit.*, Docs. 730, 785, 922.

[58] 69 F.4th 1190 (10th Cir. 2023). The mandate issued August 21, 2023.

[59] *Id.* at 1204–08.

[60] *Id.* at 1211. The court declined to decide "what effect any per se presumption of a Sixth Amendment violation might have in applying the *Hill* prejudice standard—a reasonable probability that the defendant would not have pleaded guilty absent the deficient performance." *Id.*

[61] *Id.* at 1212–13.

> not even contend that his counsel performed deficiently, or that such deficient performance prejudiced him by depriving him of a trial right he would have chosen, we conclude that Spaeth's § 2255 motion must be dismissed.[62]

The Tenth Circuit's ruling in *Spaeth* compels dismissal of Petitioner's § 2255 motion based on the March 2 through July 27, 2015 audio recordings. These recordings were made and accessed by the government before Petitioner entered his guilty pleas on April 26, 2016.[63] Petitioner challenges both his conviction and his sentence based on this alleged pre-plea Sixth Amendment violation by the government. Like Mr. Spaeth, Petitioner relies on the per se prejudice rule in *Shillinger* and does not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of counsel caused him to enter his plea involuntarily and unknowingly. He is also precluded from challenging his sentence or term of supervised release based on any alleged pre-plea violation.[64]

### B.  *Orduno-Ramirez*

The recorded meetings between Petitioner and Rokusek took place between February 23, 2016 and April 25, 2016. These meetings occurred before Petitioner entered the guilty pleas on April 26, 2016, and before he was sentenced on August 22 and October 2, 2017. The Court has clarified that the government did not have possession of and access to the video recordings until May 17, 2016, and it gave up possession when it disgorged the videos to the Court on August 9, 2016.[65] Thus, any alleged Sixth Amendment violation stemming from the video recordings could not have occurred until after Petitioner's pleas but before he was sentenced.

---

[62] *Id.* at 1213.

[63] *See CCA Rec. Lit.*, Doc. 809-1 at 8.

[64] The Court does not reach the government's alternative grounds for dismissal that Petitioner's claim is untimely or procedurally defaulted.

[65] *See CCA Rec. Lit.*, Doc. 784 at 13.

The Court's December 10, 2021 Order concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[66]  Instead, Petitioners in this temporal category must demonstrate prejudice, that is, "a realistic possibility of injury to [the defendant] or benefit to the [government]."[67]

The Tenth Circuit Court of Appeals affirmed this Court's decision in another § 2255 proceeding raising a similar Sixth Amendment violation claim involving video recordings.  In *United States v. Orduno-Ramirez*, the Tenth Circuit declined to categorically extend a conclusive presumption of prejudice to post-plea or -conviction intrusions into attorney-client communications.[68]  After noting this Court held that the petitioner must show prejudice in such cases, the Tenth Circuit did "not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend otherwise."[69]  Nevertheless, the court found that the government showed that the intrusion did not cause Mr. Orduno-Ramirez prejudice, and Orduno-Ramirez did not contend that he was prejudiced, relying instead on the presumption of prejudice in *Shillinger*.[70]  The court further found that the government showed that the lead prosecutor did not view the videos, the soundless video recordings provided no strategic value to the prosecution, and the record reveals no irregularity in the petitioner's sentencing proceedings.[71]

---

[66] *Id.*, Doc. 1034.

[67] *Id.*; *see Shillinger v. Haworth,* 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

[68] 61 F.4th 1263, 1272–77 (10th Cir.) (discussing *Shillinger*, 70 F.3d at 1142), *cert. denied*, ---S. Ct.---, 2023 WL 7287223 (Nov. 6, 2023).

[69] *Id.* at 1276.

[70] *Id.* at 1277.

[71] *Id.*

The Tenth Circuit also denied Orduno-Ramirez's request to order supplemental briefing on the burden of proof question.[72]  In a separate related case on appeal, however, the court recently agreed to address the issue of "[w]hether the district court erroneously required [Petitioner] to demonstrate prejudice to establish his Sixth Amendment claim."[73]

Although the question of whether the petitioner must show prejudice or whether the government must show lack of prejudice is an open question, the Court easily finds that Petitioner has not been prejudiced in this case.  While the December 10, 2021 Order held that Petitioner bore the burden to show prejudice resulting from the intentional intrusion into his attorney-client communications, the government introduced evidence and arguments showing that he suffered no prejudice.  As was the case in *Orduno-Ramirez*, the government submitted affidavits from the prosecutors stating that at no time during their involvement in the case did they view or become privy to any video recordings of Petitioner at CCA.

Critically, Petitioner entered into three binding Rule 11(c)(1)(C) plea agreements and was sentenced consistent with those agreements.  The government's discretion or capacity to prejudice Petitioner was curtailed by the specific terms of the plea agreements.  The 180-month sentence was well-within the agreed-upon Guidelines range of 120 to 240 months' imprisonment and below the advisory Guidelines range of 262 to 327 months' imprisonment.  Thus, the only governmental conduct that had any effect on sentencing was its offer of binding plea agreements that allowed Petitioner to avoid a potential sentence of 22 to 27 years' imprisonment.

The Court agrees that none of the information the Court, the United States Probation Office, or the government relied on for sentencing could have come from the February through

---

[72] *Id.* at 1277 n.24.

[73] *United States v. Valdez*, No. 22-3025 (10th Cir. Sept. 12, 2023).

April 2016 video recordings. Even assuming the government bears the burden of proving lack of prejudice, it has met that burden because the record reveals no irregularity in or threat to the reliability or fairness of Petitioner's sentencing proceedings, where he received the sentence within the range that he bargained for in his Rule 11(c)(1)(C) plea agreements. Because the government has shown that the intrusion did not cause prejudice—and Petitioner does not contend that he was actually prejudiced—there is no Sixth Amendment violation and no ground for relief under § 2255.[74]

### III.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[75] If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[76] For the reasons explained above, Petitioner has not made a substantial showing on either prong and the Court therefore denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Petsamai Phommaseng's Motion to Withdraw Claims 2 and 3 (Doc. 751 in Case No. 19-2491) is **granted**;

---

[74] *Orduno-Ramirez*, 61 F.4th at 1266.

[75] 28 U.S.C. § 2253(c)(2).

[76] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

the government's Motion to Supplement the Record (Doc. 786 in Case No. 19-2491) is also **granted;**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255, as supplemented (Doc. 746 in Case No. 14-20014; Doc. 205 in Case No. 15-20006; and Doc. 550 in Case No. 15-20020-JAR-5) is **dismissed in part and denied in part** without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: December 8, 2023

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE